UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYLE JIGGETTS,

               Plaintiff,

     -v-                               No.02 Civ. 8959 (LTS)(JCF)

OLGA DIAZ, THE BOARD OF EDUCATION
OF THE CITY OF NEW YORK, and THE
UNITED FEDERATION OF TEACHERS,

               Defendants.

## **OPINION AND ORDER**

Plaintiff Kyle Jiggetts ("Plaintiff"), a former school aide and substitute paraprofessional, filed this action pro se, alleging that Defendants Olga Diaz ("Diaz"),[1] The Board of Education of the City of New York ("BOE") and The United Federation of Teachers ("UFT") (collectively "Defendants") discriminated against him because of his race, national origin, and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e -

---

[1]    Defendant Diaz, who was, during relevant period, originally an Assistant Principal at P.S. 721X and then Principal of that school, (BOE 56.1 Stmt. ¶ 4), does not appear to have been served with a copy of the summons and complaint in this action, and thus no appearance was made on her behalf.  However, the BOE argues, correctly, that Ms. Diaz, as an employee of the BOE, may not be held individually liable under Title VII or the ADA, and requests that all Title VII and ADA claims against Ms. Diaz be dismissed by the Court sua sponte. (BOE's 56.1 Stmt., fn. 1).  See Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) (noting "that individuals are not subject to liability under Title VII.") (internal quotations omitted); see also Riddle v. Liz Claiborne, Inc., Nos. 00 Civ. 1374, 03 Civ. 8798, 2006 WL 3057289, at * n. 4. (S.D.N.Y. Oct. 27, 2006) ("Similarly, the Second Circuit has held that individual defendants may not be held personally liable for alleged violations of the ADA", citing Corr v. MTA Long Island Bus, 199 F.3d 1321 (2d Cir.1999)), aff'd in unpublished opinion by Riddle v. Claiborne, 270 Fed. Appx. 82 (2d Cir. Mar 21, 2008).  Accordingly, Plaintiff's claim against the individual defendant, Diaz, is dismissed for failure to state a claim.

2000e-17 ("Title VII").  Plaintiff also alleges that Defendants discriminated against him because

of his disabilities in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§

12112-12117 ("ADA"), and that Defendants discriminated against him in violation of Title VII,

42 U.S.C. § 2000e-3 in retaliation for filing a complaint with the New York City Commission on

Human Rights.  Before the Court are Plaintiff's motion for summary judgment as against

Defendants BOE and UFT and Defendants BOE and UFT's cross-motions for summary

judgment, pursuant to Federal Rule of Civil Procedure 56.  The Court has jurisdiction of this

action pursuant to 28 U.S.C. § 1331.  For the following reasons, Plaintiff's motion is denied in its

entirety and Defendants' motions are granted in their entirety.

BACKGROUND

The following material facts are undisputed unless otherwise indicated.  Plaintiff

describes himself as a Black American and Muslim who suffers from depression and anxiety.

(Am. Compl. 3, 6.[2])  He began working for the BOE in April 1999, as a probationary school aide,

at P.S. 721X in District 75 in the Bronx.  (BOE 56.1 Stmt. ¶ 3.)  Plaintiff held this position for

approximately seven weeks before he was notified via letter from Defendant Diaz that he was

terminated as of June 14, 1999.  (Am. Compl. 4; BOE 56.1 Stmt. ¶ 5.)  Diaz's letter did not cite a

reason for the termination.  (Declaration of Rippi Gill ("Gill Decl."), Ex. 8.)  Plaintiff appears to

have worked at P.S. 181 for much of the period from the time of that termination until October of

1999.  (Gill Decl., Ex. 15, Jiggetts Dep. p. 71.)

---

[2]     Plaintiff's Amended Complaint uses two pagination systems, as the first four
pages are a form complaint, and then there are an additional 4 handwritten pages.
All page number references to his Amended Complaint in this Memorandum
Opinion treat the first form complaint page as page 1, as that is how the Amended
Complaint was received in Chambers.

Plaintiff was rehired at P.S. 721X in October of 1999.  (Id. at 72.)  He was again terminated from P.S. 721X in early November 1999.[3]  (Am. Compl. 4.)  The BOE alleges that this termination was a result of letters received by the P.S. 721X Principal, Defendant Olga Diaz, from several employees concerning Plaintiff's conduct and performance.  (BOE 56.1 Stmt. ¶¶ 10-11.)  On or about September 13, 2000, Plaintiff filed a complaint with the New York City Commission on Human Rights ("NYCCHR") charging the BOE and Diaz with discrimination in violation of Section 8-107.1(a) of the Administrative Code of the City of New York.  (UFT 56.1 Stmt. ¶ 42; Gill Decl., Ex. 2, NYCCHR Verified Compl.)  Plaintiff alleged that he was perceived to be a drug abuser and that he was improperly terminated.[4]  (Gill Decl., Ex. 2, NYCCHR Verified Compl.)  After his termination in November 1999, there was a BOE hiring freeze. Plaintiff was out of work for 18 months and lost all of his benefits.  (Am. Compl. 5.)

In June 2001, Plaintiff applied for a position as a substitute paraprofessional in District 75.  (Id.; BOE 56.1 Stmt. ¶ 13.)  Substitute paraprofessionals are hired to fill day-to-day absences on a rotating basis from the Substitute Paraprofessional Registry (the "Registry"). (Declaration of Linda Zimmerman ("Zimmerman Decl.") ¶ 3;  BOE 56.1 Stmt. ¶ 16.)  Substitute

---

[3]     Plaintiff alleges in his Amended Complaint that he was terminated on November 5, 1999.  Defendant BOE states that he was terminated on November 4, 1999, and in his deposition the Plaintiff acknowledged that his termination letter was dated November 4, 1999.  (Gill Decl., Ex. 15, Jiggetts Dep. p. 88.)  This factual inconsistency is not material to the Court's determination of the pending summary judgment motions.

[4]     In the Matter of the Complaint of Kyle Jiggetts against the NYC Board of Education and Olga Diaz, the NYCCHR found that, "if respondents terminated [Jiggetts] because they believed he was a substance abuser, they did not violate the Administrative Code" because he was not a member of the protected class as delineated by the Administrative Code.  (See Gill Decl., Ex. 2, NYCCHR Notice of Administrative Closure.)

paraprofessionals are hired and assigned directly from the Registry rather than by the individual schools where they might be placed.  (Zimmerman Decl., ¶ 3;  BOE 56.1 Stmt. ¶ 17.)  Plaintiff began work as a substitute paraprofessional on June 12, 2001, at Harry S. Truman High School ("Truman").  (Am. Compl. 5;  BOE 56.1 Stmt. ¶ 21.)  In September of 2001, Plaintiff was assigned to work at Fannie Lou Hamer Freedom High School ("Fannie Lou").  (Am. Compl. 5;  BOE 56.1 Stmt. ¶ 23.)  He worked one-on-one with a wheelchair bound student.  (Am. Compl. 5.)  Plaintiff worked at Fannie Lou on various dates throughout September and October 2001.  (BOE 56.1 Stmt. ¶ 23.)  Plaintiff was later contacted by the Registry and was told not to return to Fannie Lou and that he would be contacted concerning a new assignment.  (Am. Compl. 7; BOE 56.1 Stmt. ¶ 25.)  On October 24, 2001, Plaintiff was replaced by Malcolm Jones, a substitute paraprofessional whom Defendants contend had more seniority than Plaintiff.  (BOE 56.1 Stmt. ¶ 27.)

At the end of October 2001, Plaintiff was contacted by the Registry, and he was placed in various schools, including 178, 181 and Truman, on a number of different days from late October 2001 through January 2002.  (BOE 56.1 Stmt. ¶¶ 23, 29.)  According to the BOE's evidentiary submissions, the Registry attempted to contact Plaintiff on various dates in March and April 2002, but was unable to reach Plaintiff.  (BOE 56.1 Stmt. ¶ 30; Gill Decl., Ex. 10.)  Plaintiff was removed from the Registry on May 8, 2002.  (BOE 56.1 Stmt. ¶ 32.)  Defendants contend that this removal was based solely on Plaintiff's failure to inform the Registry of his change of telephone number.  (BOE 56.1 Stmt. ¶ 32; see also Gill Decl., Ex. 10 ("Could not contact" written in all caps next to the May 8, 2002, removal from Registry).)  Plaintiff contended in his deposition that the Registry had his phone numbers, but admitted that the

Registry told him that they had tried reaching him.  (Gill Decl., Ex. 15, Jiggetts Dep. p. 152.)

After contacting the Registry, Plaintiff was reinstated on June 25, 2002.  (BOE 56.1 Stmt. ¶ 33.)

Plaintiff received several placements in different schools beginning in October 2002 through

December 2, 2002.  (BOE 56.1 Stmt. ¶ 36.)  Plaintiff's placement on December 2, 2002, was at

Truman.  (BOE 56.1 Stmt. ¶ 37.)  Plaintiff was again removed from the Registry on December 2,

2002, this time with the notation "DNS," which, according to Defendants, means "Do Not Send."

(BOE 56.1 Stmt. ¶ 56.)

       According to Defendants, Plaintiff's removal from the Registry was the result of

Plaintiff's behavior at Truman on December 2, 2002.  (BOE 56.1 Stmt. ¶ 56.)  Bonnie Brown, the

Superintendent's representative for District 75, wrote to Linda Zimmerman, the Director of the

Paraprofessional Registry, to request that Plaintiff be removed from the District 75 registry based

upon information that Truman staff and administration had provided.  (BOE 56.1 Stmt. ¶ 55; see

also Zimmerman Decl. ¶ 15 (stating that Mr. Jiggetts was removed from the Registry for the

second time "based on information received from the staff and administration from Truman").)

Truman principal Rima Ritholtz (see BOE 56.1 Stmt. ¶ 48) wrote to the District 75

paraprofessional payroll, explaining that she had sent Plaintiff home on December 2, 2002,

because of his "odd" and "disoriented" behavior, and because his eyes appeared bloodshot and

there was an odor of alcohol about him.  (Gill Decl., Ex. 12.)  Other letters from Truman staff

indicated that Plaintiff's eyes looked bloodshot and that he was found looking through lockers

which contained student belongings.  (Gill Decl., Ex. 13.)  Plaintiff admitted in his deposition

that he remembers going to work not feeling well, that he felt odd and disoriented and that his

"mind was somewhere else."  (Gill Decl., Ex. 15, Jiggetts Dep. pp. 170-72.)  Plaintiff also

admitted that he went to several classes looking for his coat.  (Gill Decl., Ex. 15, Jiggetts Dep. pp. 176-77.)

Upon being removed and replaced at Fannie Lou in October 2001, Plaintiff went to the UFT to file a grievance against the BOE.  (Am. Compl. 5.)  Plaintiff met with UFT Representative Rose Dorsey, who told him that he did not have a grievance.  (Id.)  Plaintiff claims that Rose Dorsey refused to show him the UFT contract.  (Id.)  On or about December 3, 2001, Plaintiff filed an Improper Practice Charge with a labor board,[5] against BOE and UFT. (Am. Compl. 5, 6; UFT 56.1 Stmt. ¶ 39.)  Plaintiff later obtained a copy of the UFT contract and entered into a settlement agreement with the UFT regarding the Improper Practice Charge.  (Am. Compl. at 5-6; UFT 56.1 Stmt. ¶¶ 40-41.)

In the Amended Complaint, Plaintiff states that the UFT contract gives him the right to grieve and that the contract does not state that someone outside the title of paraprofessional could fill a paraprofessional position.  (Am. Compl. 6.)  Plaintiff asserts that "this" proves that he was being discriminated against, stating that he believes the discrimination is based upon his religious beliefs and retaliation for filing a complaint with the NYCCHR.  (Id.) Plaintiff claims that members of the staff of Fannie Lou, including the principal Donald Friedman and a teacher by the name of Meghan, were aware of his religious belief.  (Id.)

On February 8, 2002, Plaintiff filed a charge of religious discrimination with the

---

[5]     Plaintiff states in his Amended Complaint that his complaint was filed with the "labor relations board," and also refers to the "National Labor Relations Board." (Am. Compl. 5, 6.)  The UFT maintains the charge was filed with the New York State Public Employee Relations Board, and has attached as Exhibit 4 a copy of that charge.  It is not important for the purposes of this motion to resolve the immaterial factual discrepancy of which labor board the charge was filed with.

New York State Division of Human Rights ("NYSDHR") against the BOE (the "February 8, 2002, charge").  (BOE 56.1 Stmt. ¶ 63; Gill Decl., Ex. 3.)  Notice of this charge was sent to the EEOC for dual filing purposes.  The NYSDHR found that the Plaintiff had "not substantiated the allegation that he was disparately treated by [BOE] because he is Muslim."  (Gill Decl., Ex. 3.)  The EEOC adopted the findings of NYSDHR and issued the Plaintiff a Notice of the Right to Sue on December 17, 2002.  (Gill Decl., Ex. 4.)  On March 11, 2002, Plaintiff filed another charge (which was dated February 14, 2002) with the EEOC (the "February 14, 2002, charge").  (Gill Decl., Ex. 5.)  This charge asserted claims against both the BOE and the UFT, for allegedly retaliating against the Plaintiff for filing the September 13, 2000, charge with the NYCCHR.  (Gill Decl., Exs. 2 & 5; Declaration of Antonio M. Cavallaro ("Cavallaro Decl."), Ex. 2.)  Plaintiff then commenced the present action, alleging retaliation and discrimination based on race, national origin, religion and disability.

<u>D</u>ISCUSSION

Summary Judgment Standard

Summary judgment may be granted if the submissions of the parties, taken together, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> [T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.  As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986) (emphasis in original).  A dispute

is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248).  When determining whether a genuine issue of material fact exists, the Court views all evidence in the light most favorable to the nonmoving party.  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 465-66 (2d Cir. 2001), cert. denied, 534 U.S. 993.  "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

Plaintiff's Motion for Summary Judgment

### Plaintiff's Failure to Comply with Southern District Local Rule 56.1

Defendants BOE and UFT argue that, because Plaintiff has failed to comply with Southern District Local Rule 56.1, which requires that parties moving for, and opposing, summary judgment motions include short and concise separate statements identifying the material facts that they contend are undisputed or disputed (as the case may be), his motion for summary judgment must be denied.

"A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," Holtz v. Rockefeller & Co., Inc., 258 F.3d 63, 73 (2d Cir. 2001) (citations omitted), and where the relevant facts of a party's argument are readily apparent from other sections of their papers, courts have excused a lack of compliance with Rule 56.1, see Photopaint Technologies, LLC v. Smartlens Corp., 335 F.3d 152, 156 n. 2 (2d Cir. 2003).  In light of the Plaintiff's pro se status and the fact that he has proffered evidentiary

material, the Court will excuse his failure to comply with Rule 56.1 and will address his contentions on the merits.

### *Plaintiff's Evidentiary Submissions and Arguments*

Plaintiff's motion for summary judgment is supported by a sworn affidavit to which he has attached his two discharge letters from P.S. 721X (signed by Defendant Olga Diaz); his resume; the letters received by Ms. Diaz from several employees concerning Plaintiff's conduct and performance that allegedly resulted in his November 4, 1999, termination from P.S. 721X; copies of letters provided to him regarding his unsuccessful September 13, 2000, NYCCHR claim; Article 71 of what appears to be a UFT contract; Defendant BOE's responses and objections to his discovery requests; the letter from the Superintendent's representative asking that he be removed from the Registry of Substitute Paraprofessionals; a letter dated December 3, 2002, from the Principal of PS 176X/Truman[6] explaining why Plaintiff was sent home; letters from PS 176X/Truman staff concerning Plaintiff's behavior; a printed copy of his work history; and a note dated December 13, 2002, from a Dr. Ronald Reichel chronicling an illness Plaintiff was experiencing and setting a date whereby he would be ready to return to work.

In his affidavit, Plaintiff refers to the written documents he has attached as "slanderous and false." (Pl's Motion for Summary Judgment, Pl.'s Aff. p. 2.) He reiterates many of the factual allegations in his Amended Complaint, and asserts in addition that Principals Diaz and Ritholtz failed to follow what Plaintiff describes as a Department of Education policy regarding the provision of an opportunity to renew and respond to negative information. (Id. at

---

[6]     It appears from the record that 176X is or is closely affiliated with Truman. (See e.g., Gill Decl., Ex. 15, Jiggetts Dep. p. 168 ("Q: 176 is Truman? A: Right.").)

5.)  As explained below in connection with the discussion of Defendants' motions, many of Plaintiff's claims are time-barred or unexhausted and, with respect to his timely-asserted, exhausted claims, Plaintiff has failed to raise genuine issues of material fact precluding the granting of summary judgment in his favor, and has similarly failed to demonstrate that he is entitled to judgment as a matter of law.  Accordingly, Plaintiff's motion is denied in its entirety.

Defendants' Motions for Summary Judgment

   *Time-Barred Claims*

   Defendants seek summary judgment with respect to Plaintiff's Title VII and ADA claims regarding alleged discrimination in connection with Plaintiff's employment at P.S. 721X on the grounds that they are time-barred.  In a state such as New York, which maintains its own antidiscrimination agency with investigative powers, a party must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days from "the alleged unlawful employment practice" under both Title VII and the ADA.  42 U.S.C. § 2000e-5 (e)(1); 42 U.S.C. § 12117(a).  The party's failure to file a charge within this time period will cause him to lose his right to recover under the federal statute.  National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 111 (2002).

   Even when the record is viewed in the light most favorable to Plaintiff, Plaintiff's claims with respect to P.S. 721X are time-barred because he failed to file a timely agency or EEOC charge.  Plaintiff's second P.S. 721X termination occurred on November 5, 1999. Plaintiff would thus have been required to file a charge with the EEOC or the appropriate state or local agency by August 31, 2000, at the latest.  Plaintiff filed a complaint with the NYCCHR on September 13, 2000, alleging discrimination as the basis of his termination from P.S. 721X, and

subsequently filed two complaints with the EEOC, on February 8, 2002, and February 14, 2002. All three complaints fall outside the applicable time period. Accordingly, summary judgment is granted to Defendants regarding all of Plaintiff's claims with respect to his employment at P.S. 721X, as those claims are time-barred.

> ### *Unexhausted Claims*

Defendants argue that they must be granted summary judgment with respect to all claims on which Plaintiff failed to exhaust his administrative remedies by raising particular complaints of discrimination in the administrative process. The BOE argues that the Plaintiff failed to raise his race, national origin and disability discrimination claims against it in his EEOC charges. The UFT asserts that the Plaintiff failed to raise his race, religion, national origin and disability claims against it in his EEOC charges. As noted above, Plaintiff filed two separate charges with the EEOC, one against the BOE claiming discrimination based on creed and the other against both the BOE and the UFT claiming discrimination based on retaliation for filing a complaint with the NYCCHR. (Gill Decl., Exs. 3-6; Cavallaro Decl., Exs. 2, 3.)

It is well settled that an employment discrimination claim generally must be properly raised with the EEOC as a prerequisite to bringing the claim into federal court. See, e.g., Holtz, 258 F.3d at 82-83; Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000). This exhaustion requirement pertains to claims made under both Title VII and the ADA. Spurlock v. Nynex, 949 F. Supp. 1022, 1029 (W.D.N.Y. 1996) ("As under Title VII, a plaintiff bringing an employment discrimination action under the ADA must first file a complaint with the EEOC."); see 42 U.S.C. § 12117 (adopting for claims brought under the ADA the administrative exhaustion requirement of Title VII, codified at 42 U.S.C. § 2000e-5); Bent v. Mount Sinai

Medical Center, 882 F. Supp 353, 355 (S.D.N.Y. 1995)).  The purpose of such requirement is "to give the administrative agency the opportunity to investigate, mediate, and take remedial action." Stewart v. U.S. I.N.S., 762 F.2d 193, 198 (2d Cir. 1985).

The Second Circuit has recognized three situations where a plaintiff may assert in district court a claim that was not specifically pleaded in his administrative complaint because it is "reasonably related" to his EEOC claims: (1) claims that are within the scope of the EEOC investigation that is likely to grow out of the charge; (2) claims of retaliation for filing the EEOC charge; and (3) further incidents that occur after the filing of the EEOC charge.  See Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402- 03 (2d Cir. 1993), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care, 163 F.3d 684 (2d Cir. 1998); see also Holtz, 258 F.3d at 83 ((holding that "[a] claim raised for the first time in the district court is reasonably related to allegations in an EEOC charge where the conduct complained of would fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination." (internal citation and quotation marks omitted)).  In this inquiry, "the focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'"  Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (quoting Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 637 (9th Cir. 2002)).  "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'"  Williams v. New York City Housing Authority, 458 F.3d 67, 70 (2d Cir. 2006) (quoting Deravin, 335 F.3d at 202).

*Plaintiff's EEOC Charges Against the BOE*

Plaintiff's EEOC charge against the BOE only made allegations of religious discrimination and retaliation.  The additional claims asserted in Plaintiff's Amended Complaint against the BOE – discrimination based on race, national origin and disability – are not reasonably related to those charges.  (See Gill Decl., Ex. 3, February 8, 2002, Charge of Discrimination; see also Gill Decl., Ex. 2, NYCCHR Verified Complaint at ¶ 1; Gill Decl., Ex. 5, February 14, 2002, Charge of Discrimination.)  An investigation of charges of discriminatory action based upon creed and retaliation would not naturally result in an investigation into discrimination based on the race, national origin or disability of an employee.  Holtz, 258 F.3d at 83-84 (holding that claims of sexual harassment and age discrimination set forth in plaintiff's EEOC charge were not "reasonably related" to claims of religious and  national origin discrimination); Coleman v. Board of Education, No. 96 Civ. 4293, 2002 WL 63555, at *3 (S.D.N.Y. Jan. 16, 2002) (holding that a claim of gender discrimination is not "reasonably related" to claims of race, national origin or color discrimination).

Although Plaintiff stated in the EEOC charge filed by Plaintiff on February 14, 2002, that he is a "black-male," this statement was insufficient to put the agency on notice that Plaintiff was alleging discrimination based upon race because Plaintiff's EEOC complaint contains "no descriptions of racial harassment or racial discrimination."  Little v. National Broadcasting Co., Inc., 210 F. Supp. 2d 330, 375 (S.D.N.Y. 2002).  Indeed, there are no other statements regarding race in the entire EEOC charge.  Thus, Plaintiff's charges against the BOE of discrimination based on race, national origin and disability are unexhausted, and the BOE is entitled to judgment as a matter of law dismissing those claims.

*Plaintiff's EEOC Charges against the UFT*

Plaintiff filed an EEOC charge dated February 14, 2002, against the UFT, alleging discrimination based on retaliation for having filed a complaint with the NYCCHR in which Plaintiff alleged that he had been discriminated against because "of his perceived drug abuse." (February 14, 2002 Charge of Discrimination; see Cavallaro Decl., Ex. 2.)  This charge, alleging retaliation, is identical to the retaliation charge of the same date made against BOE.  Plaintiff's February 8, 2002, charge alleging discrimination on the basis of religion, was only brought against the BOE and does not assert a charge against the UFT.

The claims of national origin, race, religious and disability discrimination that Plaintiff asserts against the UFT in this action are not reasonably related to the retaliation claim that Plaintiff made in the February 14, 2002, charge against the UFT, for substantially the reasons explained above in connection with Plaintiff's similar claims against the BOE.  The UFT is therefore entitled as a matter of law to summary judgment dismissing Plaintiff's claims of discrimination based on religion, race, national origin and disability.

*Remaining Claims*

Because Plaintiff timely asserted his charge of religious discrimination against the BOE in his February 8, 2002, EEOC charge concerning his termination or replacement at Fannie Lou and his failure to obtain a "regular paraprofessional" position, and his charges of retaliation against the BOE and the UFT, in his February 14, 2002, EEOC charge concerning the same matters, those claims are exhausted and are properly before this Court.  The Court will also consider the sufficiency of Plaintiff's allegations that the BOE further retaliated against Plaintiff by asking him not to return to Truman and removing him from the Registry in December 2002.

Although these actions occurred after Plaintiff filed his February 2002 EEOC charges and there is no evidence that Plaintiff filed a separate EEOC charge with respect to these claims, the Second Circuit has recognized that claims reasonably related to claims asserted before the EEOC may be pursued in a subsequent federal court action.  <u>Legnani v. Alitalia Linee Aeree Italiane, S.P.A</u>, 274 F.3d 683, 686 (2d Cir. 2001).  In light of this principle and Plaintiff's <u>pro se</u> status, the Court examines Plaintiff's retaliation claims with respect to the Truman and Registry removals as reasonably related to the discrimination and retaliation allegations in his EEOC charges.  <u>Id.</u> ("A claim alleging retaliation by an employer against an employee for filing a discrimination charge is one type of claim we have recognized as "reasonably related" to the underlying discrimination charge." (internal quotations and citations omitted)).

*Merits of Religious Discrimination Claim*

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion."  42 U.S.C.A. § 2000e-2(a) (West 2003).

Religious discrimination suits brought under Title VII are analyzed according to a burden shifting framework first articulated by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973).  <u>See</u> <u>Meiri v. Dacon</u>, 759 F.2d 989, 994 (2d Cir. 1985) (applying the <u>McDonnell Douglas</u> framework to a religious discrimination claim).  Under the <u>McDonnell Douglas</u> analysis, the plaintiff bears the burden of establishing a <u>prima facie</u> case of

discrimination by a preponderance of the evidence.  To establish a prima facie case of religious discrimination, a plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for the position; (3) adverse employment action was taken against him; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. Spencer v. City University of New York/College of Staten Island, 932 F. Supp. 540, 546 (S.D.N.Y. 1996).  The burden of establishing a prima facie case under McDonnell Douglas is minimal.  Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000).  Plaintiff has, nonetheless, failed to proffer evidence sufficient to sustain his initial burden on this claim.

Plaintiff alleges that he was dismissed from Fannie Lou, that he was immediately replaced by a custodian and school aide, and that he was eventually replaced by another paraprofessional. (Am. Compl. 2, 5-6.)  Plaintiff alleges that he had participated in class discussions about religion and Islam at Fannie Lou and that the Principal and another teacher at the school knew that Plaintiff was a Muslim.  (Am. Compl. 6.)  Plaintiff also alleges that the paraprofessional who replaced him was a Christian.  (Pl's Reply Mem. p. 5.)  Defendants' evidence, however, indicates that substitute paraprofessionals are hired and assigned centrally from the Registry and not by the schools to which they are assigned.  (Zimmerman Decl. ¶ 3.) Furthermore, according to Defendants' undisputed evidence, substitute paraprofessionals do not identify their race or religion on the assignment information sheet that they must complete before being added to the Registry, (Zimmerman Decl. ¶ 2), and Plaintiff has not proffered any evidence that the Registry was aware that Plaintiff was a Muslim.   In failing to present any evidence that those responsible for the allegedly adverse employment action were aware of his religious affiliation, Plaintiff has failed to present any evidence from which a rational fact finder could

draw an inference of religious discrimination.  Thus, Plaintiff has failed to present a prima facie case of religious discrimination and the BOE is entitled to summary judgment in its favor on Plaintiff's religious discrimination claims.

*Merits of Retaliation Claim*

In his February 14, 2002, EEOC charge, Plaintiff indicated that he was filing the charge of discrimination based on retaliation, and that he was bringing the charge against both the UFT and BOE.  Although Plaintiff's charge does not describe a specific instance or act of retaliation, it does reference his September 13, 2000, NYCCHR complaint, which charged the BOE and Defendant Diaz with discrimination based on perceived drug abuse in violation of Section 8-107.1(a) of the Administrative Code of the City of New York, and his replacement at Fannie Lou.  In his amended complaint, Plaintiff alleges that he was retaliated against for making the NYCCHR complaint and references his replacement at Fannie Lou in October 2001 and his December 2002 removal from Truman and the Registry.  (Am. Compl. 5-6.)  Plaintiff also alleges that, following his replacement at Fannie Lou, he met with a UFT representative who refused to file a grievance on his behalf or provide him with requested materials.  (Id. at 5.) Thus, the Court will treat Plaintiff's charge of retaliation as one brought against the BOE and UFT, alleging that actions taken against him by those entities within the 300-day period preceding the filing of that charge were acts of retaliation for the September 2000 NYCCHR complaint.

Retaliation Charge Against the BOE

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed

any practice made an unlawful employment practice by" Title VII.  42 U.S.C. § 2000e-3(a).  In

order to establish a prima facie claim for retaliation, a plaintiff must prove that "(1) that []he was

engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the

employer was aware of that activity; (3) that []he suffered adverse employment action; and (4)

that there was a causal connection between the protected activity and the adverse action."

Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).  Again, the

burden of proof on plaintiffs to establish a prima facie case is minimal.  Jute v. Hamilton

Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).  If the plaintiff establishes a prima facie

case of retaliation, "the onus falls on the employer to articulate a legitimate, non-retaliatory

reason for the adverse employment action."  Id.  If the employer offers such proof, the burden

shifts to the plaintiff to show "that retaliation was a substantial reason for the adverse

employment action."  Id.

            Even assuming Plaintiff had a reasonable, good faith basis for believing that the

practice he challenged in the NYCCHR complaint was unlawful,[7] Plaintiff's retaliation claims

against the BOE fail because he has presented no evidence from which a reasonable fact finder

could infer a causal connection between his retaliation complaint and any adverse BOE action.

Proof of causal connection can be established either "indirectly, by showing that the protected

activity was followed closely by discriminatory treatment, or through other circumstantial

---

[7]    The NYCCHR found that "if respondents [BOE] terminated [Jiggetts] because
they believed he was a substance abuser, they did not violate the Administrative
Code."  With respect to the element of participation in protected activity, Plaintiff
need not, however, establish that the conduct that he opposed was actually a
violation of Title VII, but only that he possessed a "good faith, reasonable belief
that the underlying employment practice was unlawful" under Title VII.  Reed v.
A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996).

evidence such as disparate treatment of fellow employees who engaged in similar conduct" or "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). Plaintiff has presented no direct or indirect evidence of such a connection.

Plaintiff's conclusory allegations of retaliation and statements about other substitute paraprofessionals being offered full time positions and indefinite work schedules, are insufficient to raise a genuine issue of material fact as to whether he was treated differently from other similarly-situated employees. Nor does the timing of the adverse employment action constitute indirect evidence of the necessary causal connection to his NYCCHR charge. Plaintiff's NYCCHR complaint was filed in September 2000. He was not removed from Fannie Lou until late October 2001 – over a year later – and was not removed from Truman and the Registry until December 2002 – more than two years after filing the NYCCHR complaint. Although there is no bright line rule for determining when an alleged adverse action is too far from the protected activity to establish a causal connection in this Circuit, see, e.g., Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases), "[t]ime periods greater than one year have generally been rejected when offered to indirectly establish a causal connection between an act and its purported consequences." Deravin, 2007 WL 1029895, at *11 (collecting cases). And "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (internal quotation omitted) (emphasis added). In this case,

the attenuated temporal connections, standing alone, are insufficient to support a reasonable fact finder's inference of a retaliatory motivation for the adverse employment actions.  Because Plaintiff has failed to establish a <u>prima facie</u> case with respect to the Fannie Lou replacement and Truman and Registry removals, the BOE is entitled to summary judgment on Plaintiff's retaliation claims.

Even if the court were to construe Plaintiff's retaliation complaint as alleging action in retaliation for the 2002 EEOC complaints and thus sufficiently close in time to the December 2002 Truman and Registry removals to support a <u>prima facie</u> case with respect to those adverse actions, the BOE would nonetheless be entitled to summary judgment dismissing the claim because Plaintiff has failed to present evidence sufficient to raise a genuine issue of fact as to whether the BOE's evidence of legitimate, non-retaliatory reasons for the Truman and Registry removals is a pretext for action grounded at least substantially in retaliation.  The BOE has proffered evidence in the form of internal letters explaining that Principal Ritholtz sent Plaintiff home from Truman based on concerns about his behavior at the school and possible alcohol use and that these same concerns were the basis for Plaintiff's removal from the Registry. (<u>See</u> Gill Decl., Ex. 12, (a December 3, 2002, letter from Rima Ritholtz to Ms. Ellen Forte of the Paraprofessional Payroll, explaining that Principal Ritholtz sent Plaintiff home after reports from staff about Plaintiff's "odd" and "disoriented" behavior and in light of her own interactions with Plaintiff); Gill Decl., Ex. 14 (a letter from the Superintendent's representative requesting that Plaintiff be removed from the District 75 Registry); Zimmerman Decl. ¶ 15 (Linda Zimmerman, Director of the Registry, stating that Plaintiff was removed from the Registry based on information received from the staff and administration at Truman).)  The record also includes

copies of letters from coworkers reporting the behavior.  (<u>See</u> Gill Decl., Ex. 13( letters from

staff at Truman describing Plaintiff's behavior).)  Plaintiff's proffers as to motivation consist

simply of the fact that he made the earlier NYCCHR complaint and his own conclusory

assertions that he was the victim of retaliation.  Indeed, his own deposition testimony

corroborates the staff observations of unusual behavior on the day in question.  Plaintiff testified

that he was not feeling well on the day in question, that he thinks that he may have been on

medication, and that he was tired and felt odd and disoriented, like "his mind was somewhere

else." (Gill Decl., Ex. 15, Jiggetts Dep., pp. 171-72.)  Plaintiff has thus failed to meet his burden

of rebutting the BOE's proffer of legitimate, non-retaliatory reasons, and the BOE is entitled to

summary judgment in its favor with respect to his retaliation for that reason as well.

<u>Retaliation Charge Against the UFT</u>

Title VII provides that "[i]t shall be an unlawful employment practice . . . for a

labor organization to discriminate against any member . . . because he has opposed any practice

made an unlawful employment practice by this subchapter, or because he has made a charge . . .

in an investigation."  42 U.S.C. § 2000e-3(a).  "To make out a prima facie case of retaliation by a

union, a plaintiff must show that (1) []he was engaged in an activity protected under Title VII and

known to the union; (2) []he suffered adverse union action; and (3) there was a causal connection

between the protected activity and the union's actions."  <u>Agosto v. Correctional Officers Benev.</u>

<u>Ass'n</u>, 107 F. Supp. 2d 294, 309 (S.D.N.Y. 2000).

Assuming that Plaintiff could meet the first prong of this test for substantially the

reasons discussed with respect to the BOE and because the UFT, like the BOE, does not contend

that it was unaware of the NYCCHR filing, the Court must determine whether Plaintiff has

shown that he suffered adverse union action and presented evidence sufficient to support an

inference of a causal connection between his protected activity and UFT's actions, such that

Plaintiff has established a prima facie case of retaliation.

Failure to file a union grievance has been recognized as an adverse union action

for purposes of Title VII retaliation suits.  See Johnson v. Palma, 931 F.2d 203, 207 (2d Cir.

1991) (affirming a district court determination that a union's "refusal to proceed with plaintiff's

grievance until he withdrew his discrimination complaint against [employer] constituted- an

employment action that was disadvantageous to plaintiff," internal citation and quotation marks

omitted).  Here, Plaintiff alleges that, following his replacement at Fannie Lou, he "went to file a

grievance with the UFT union" and was told by his representative that he "didn't have a

grievance."  (Am. Compl. 6.)  He further alleges that "they did not give me the union contract, so

I could know how to go about filing a grievance."  (Pl's Motion for Summary Judgment, Pl.'s

Aff. p. 3.) Although The UFT asserts that it does not file grievances on behalf of members but

may, in its discretion, appeal from grievances that are denied, Plaintiff's allegations are at least

sufficient to raise a genuine factual issue as to whether he suffered an adverse employment action

by reason of union refusal to file a grievance for him and/or denial of information regarding the

grievance process.

However, Plaintiff's retaliation claim against the UFT fails because his proffered

evidence does not satisfy the final requirement for establishing a prima facie case of retaliation –

that there be a causal nexus between his filing of the NYCCHR complaint and the UFT's alleged

failure to pursue his grievance or provide the necessary materials for him to pursue his own

grievance.  Once again, Plaintiff has provided no direct evidence of causal connection; he has

proffered no evidence of retaliatory animus directed against him by the UFT.  Nor has Plaintiff

provided indirect evidence of a causal nexus by showing disparate treatment of similarly-situated

fellow employees.  Plaintiff has proffered no evidence that the UFT filed grievances on behalf of,

or provided materials to facilitate grievance-filing to, other substitute paraprofessionals who were

terminated or replaced who did not file agency charges.  Thus, Plaintiff's ability to establish a

prima facie case of retaliation again hinges on the ability to establish causal connection based on

the temporal proximity of the protected activity and the alleged adverse union actions.

   Plaintiff filed his NYCHHR charge on September 13, 2000, and did not meet with

UFT representative Dorsey until after his replacement at Fannie Lou in October 2001.  (Am.

Compl. 5-6.)  As explained in the preceding section with respect to Plaintiff's retaliation

allegations against the BOE, where, as here, Plaintiff's sole basis for establishing a causal

connection is the temporal proximity of the protected activity and the alleged adverse action, the

events in question must be "very close" to each other in time.  In this case, the time period

between the events – over a year – is too long to establish the necessary temporal proximity and

thus could not provide a proper basis for a reasonable fact finder's inference of a causal

connection.  As Plaintiff's failure to establish a causal connection between the NYCCHR charge

filing and the alleged adverse UFT actions, is fatal to his ability to show a prima facie case of

retaliation against the UFT, the UFT is thus entitled to summary judgment on Plaintiff's

retaliation claim.

### CONCLUSION

  For the foregoing reasons, Plaintiff's motion for summary judgment is denied in its

entirety.  Defendants' motions for summary judgment are granted in their entirety and Plaintiff's

claims against Defendant Diaz are also dismissed.  The Clerk of Court is respectfully requested

to enter judgment in Defendants' favor dismissing the Amended Complaint, terminate all

pending motions, and close the case.

SO ORDERED.

Dated: New York, New York
       March 20, 2009

LAURA TAYLOR SWAIN
United States District Judge